**2015 UT App 146**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
NAOMI LUDLOW,
Defendant and Appellant.

Opinion
No. 20140106-CA
Filed June 11, 2015

Fourth District Court, Provo Department
The Honorable James R. Taylor
No. 121402619

Douglas J. Thompson, Attorney for Appellant

Sean D. Reyes and Jeffrey S. Gray, Attorneys
for Appellee

JUDGE JAMES Z. DAVIS authored this Opinion, in which JUDGES
STEPHEN L. ROTH and KATE A. TOOMEY concurred.

DAVIS, Judge:

¶1 Naomi Ludlow appeals the district court's order of restitution in connection with her conviction for theft. We reverse and remand for further proceedings.

BACKGROUND

¶2 In September 2012, Ludlow was charged with vehicle burglary and theft. She pleaded guilty to the theft charge, and the vehicle-burglary charge was dismissed. The State requested that restitution be paid to the victim of the theft. Ludlow objected to the State's calculation of the restitution amount and requested a hearing.

¶3    At the restitution hearing on November 14, 2013, the State presented testimony from the victim of the theft regarding the items stolen from her vehicle. She testified that "a Gateway laptop, a fourth generation iPod, a Droid X smartphone, [a] Pioneer amp, . . . two Kicker [subwoofers], [a] Pioneer [stereo] deck[,] . . . some cash[,] . . . and some name brand clothes" were stolen. She also testified regarding the age and retail value of the stolen items: her grandparents paid $1,500 for the laptop in 2009; she paid $300 for the iPod six months before it was stolen; her stepfather paid $300 for her smartphone a year before it was stolen; the amplifier, the two subwoofers, and the stereo deck were all "fairly new" and had retail values of $150, $200, and $150, respectively; the cash totaled approximately $100; and "six or seven shirts" and "four pairs of pants" that were "about a year old" cost "around $40 to $50 [apiece] brand new."[1]

¶4    Ludlow asserted that the victim had "overstate[d] the value of the items." She requested that the court "downward depart from" the amount requested by the State and also that the court take into account that some of the items had been returned to the victim. However, Ludlow did not put on any specific

---

1. The victim testified that she took "wear and tear" into account when determining the value of the stolen items: "I just looked at the year of the item and went back and looked at what the retail price was back then and then I gave or take some because I knew wear and tear on it and everything so . . . it's just my best estimation." Nevertheless, her testimony regarding the individual items indicated that the values she assigned reflected either the price originally paid for the item or the "retail value" of the item. As Ludlow points out, the victim "gave absolutely no indication" in her testimony regarding the individual items that her estimates "were in any way accounting for depreciation." This was the district court's impression as well: "The only testimony I have is the purchase price. . . . I don't have any evidence from which I can discount the values . . . ."

evidence regarding the value of the stolen items. The district court acknowledged that the stereo deck and some of the clothing items were returned and reduced the requested restitution by $350 to account for those items.[2] But because Ludlow had failed to contradict the State's assertion of value, the court used the purchase prices identified by the victim to calculate the value of the remaining stolen items. Accordingly, the district court ordered that Ludlow pay restitution in the amount of $2,750.

## ISSUE AND STANDARD OF REVIEW

¶5 Because the victim testified as to only the retail value of the stolen items and the State put on no evidence of the items' fair market values, Ludlow asserts that the evidence was insufficient to support the district court's calculation of restitution. We "will not disturb a trial court's restitution order unless it exceeds that prescribed by law or [the trial court] otherwise abused its discretion. A trial court will be deemed to have abused its discretion only if no reasonable [person] would take the view adopted by the trial court." *State v. Hight*, 2008 UT App 118, ¶ 2, 182 P.3d 922 (second alteration in original) (citation and internal quotation marks omitted).

## ANALYSIS

¶6 "In the calculation of . . . restitution, the victim is limited to recovering only 'pecuniary damages.'" *State v. Brown*, 2014 UT 48, ¶ 22, 342 P.3d 239 (quoting Utah Code § 77-38a-102(11) ("'Restitution' means full, partial, or nominal payment for

---

2. The district court assessed the total value of the clothing at $400, based on the victim's testimony, and reduced that amount by half to account for the returned items.

pecuniary damages to a victim . . . .")). "Pecuniary damages" relating to property are calculated based on "the fair market value of property taken, destroyed, broken, or otherwise harmed." Utah Code Ann. § 77-38a-102(6) (LexisNexis 2012). "Fair market value is measured by what the owner [of the property] could expect to receive, and the amount a willing buyer would pay to the true owner for the stolen item." *State v. Greene*, 2006 UT App 445, ¶ 11, 147 P.3d 957 (alteration in original) (citation and internal quotation marks omitted). Nevertheless, "the measure of damages is flexible, allowing trial courts to fashion an equitable award to the victim." *State v. Corbitt*, 2003 UT App 417, ¶ 14, 82 P.3d 211; *cf. Jenkins v. Equipment Ctr., Inc.*, 869 P.2d 1000, 1004 (Utah Ct. App. 1994) (holding that "[t]he primary objective in rendering an award of damages for conversion[3] is to award the injured party full compensation for actual losses" and that damages can therefore "be modified in the interest of fairness" (citation and internal quotation marks omitted)). Thus, "[i]n some cases, a purchase price may be appropriate to a determination of loss." *Corbitt*, 2003 UT App 417, ¶ 15 ("The appropriate measure of the loss or damage to a victim is fact-sensitive and will vary based on the facts of a particular case.").

¶7      For example, when considering the appropriate amount of restitution to compensate a victim for the loss of a two-week-old truck in *State v. Corbitt*, 2003 UT App 417, 82 P.3d 211, we held that a district court did not exceed its discretion by using the truck's purchase price rather than the insurance company's much lower valuation of the truck. *Id.* ¶ 16. While it may have

---

3. Cases addressing damages in the context of civil conversion actions are relevant to our analysis because pecuniary damages in the restitution context are those damages "which a person could recover in a civil action arising out of the facts or events constituting the defendant's criminal activities." Utah Code Ann. § 77-38a-102(6) (LexisNexis 2012).

been unrealistic for the victim in *Corbitt* to expect to receive the equivalent of the truck's purchase price if he attempted to sell the truck when it was two weeks old, it would also have been unrealistic to expect that the victim would have sold his two-week-old truck except under urgent necessity. And "the price at which someone would sell under urgent necessity" is not an appropriate measure of fair market value. *State v. Gorlick*, 605 P.2d 761, 762 (Utah 1979). Thus, purchase price was a more equitable estimate of the truck's value in that case—and of the victim's loss—than the insurance valuation. *See Corbitt*, 2003 UT App 417, ¶ 16; *see also State v. Ellis*, 838 P.2d 1310, 1312 (Ariz. Ct. App. 1992) ("[T]here are instances when the fair market value of the items stolen may not accurately reflect the victim's loss. A new car depreciates the moment it leaves the car lot and if it is stolen soon after it is purchased, awarding the fair market value of the car would not make the victim whole.").

¶8    Purchase price may also be a more equitable way to valuate a victim's loss of items for which there is little or no market. *Cf. Haycraft v. Adams*, 24 P.2d 1110, 1112 (Utah 1933) ("The measure of damages for the conversion of property is the market value, *if the property has a market value*, at the time of the conversion." (emphasis added)). For example, the victim in this case may have been unable to sell her clothing items for more than a nominal amount, but it is unlikely that she would have ever considered doing so when the items were still of value to her. Thus, the amount a willing buyer would pay for the victim's stolen shirts and pants may not have been an equitable calculation of those items' value. *See Ellis*, 838 P.2d at 1312 ("[I]tems of personal clothing depreciate drastically almost as soon as they are worn. In such cases it would be appropriate to award the victim the purchase price of his loss."); *State v. Tetrault*, 2012 VT 51, ¶ 13, 54 A.3d 146 (deeming "pettifoggery" a defendant's argument that the trial court should have estimated the value of small household appliances based on "what the items might fetch at a yard sale" and holding that "[a] victim of a home invasion should not have to visit local thrift stores or pore

through the classifieds to determine the value of a used blender").

¶9     While restitution should be based on fair market value, there are circumstances where the large gap between the amount a willing buyer would pay and the amount a willing seller would accept is such that the court cannot accurately calculate fair market value while still fashioning an equitable award for the victim. In such circumstances, the court should err on the side of compensating the victim for his or her loss. *See Monson v. Carver*, 928 P.2d 1017, 1027 (Utah 1996) (holding that the purpose of restitution is "to compensate victims for the harm caused by a defendant and . . . to spare victims the time, expense, and emotional difficulties of separate civil litigation to recover their damages from the defendant"); *Corbitt*, 2003 UT App 417, ¶ 14 ("[T]he measure of [restitution] damages is flexible, allowing trial courts to fashion an equitable award to the victim."); *see also Ellis*, 838 P.2d at 1311 ("The judge has discretion to use other measures of economic loss when fair market value will not make the victim whole."). Accordingly, we have declined "to adopt a black-letter rule that . . . never permits the use of purchase price . . . as [a] valuation method[] under the restitution statute." *Corbitt*, 2003 UT App 417, ¶ 15.

¶10     But while we have held that "[i]n some cases, a purchase price may be appropriate to a determination of loss," we have also held that "in other cases it may not be appropriate." *Id.* In the case at hand, where the majority of the stolen items were electronics of various ages that would clearly have a market value, the district court exceeded its discretion by using purchase price to calculate the value of all the stolen property. *See, e.g.*, *Hunter v. State*, 48 So. 3d 174, 175–76 (Fla. Dist. Ct. App. 2010) (per curiam) (holding that the trial court abused its discretion in calculating restitution without taking into account depreciation of a laptop, luggage, and handgun that were purchased several years before the burglary); *State v. Baxter*, 118 P.3d 1291, 1293 (Kan. Ct. App. 2005) ("Kansas courts have

consistently held that an award of restitution that exceeds fair market value constitutes an abuse of discretion."); *State v. Kristopher G.*, 500 S.E.2d 519, 521–22 (W. Va. 1997) (per curiam) (reversing a restitution award where the trial court calculated restitution based on replacement cost rather than fair market value).

¶11    It is the responsibility of the prosecutor to calculate "the actual or estimated amount of restitution." Utah Code Ann. § 77-38a-202(1)–(2) (LexisNexis 2012). The district court in this case acknowledged, "The only testimony I have is the purchase price." Nevertheless, the district court declined to "discount the values" presented by the State in the absence of evidence supporting such a discount and simply calculated the amount of restitution using the purchase prices provided by the victim. By doing so, the court essentially shifted the burden of proof to Ludlow to demonstrate fair market value without requiring the State to present prima facie evidence of fair market value.

¶12    In the context of proving damages for conversion, our supreme court has held that "the cost or price paid or reproduction value" of the converted item may be "a starting point" for calculating damages but that unless such evidence "is connected by some competent evidence that brings the cost or purchase price into relation with market value . . . , the evidence of cost or purchase price becomes incompetent and immaterial." *Haycraft*, 24 P.2d at 1112; *accord Smith v. Mine & Smelter Supply Co.*, 88 P. 683, 685 (Utah 1907); *see also Grimes v. Commonwealth*, 749 S.E.2d 218, 221 (Va. Ct. App. 2013) ("Replacement value does not operate as a substitute for market value. Rather, replacement value can, in certain circumstances, afford the fact finder a basis from which to draw inferences about the market value of the stolen item."), *aff'd*, 764 S.E.2d 262 (Va. 2014). When a plaintiff presents evidence of purchase price without demonstrating market value, the plaintiff is entitled to only nominal damages. *Haycraft*, 24 P.2d at 1112.

¶13   Here, the State made no attempt to relate the purchase prices identified by the victim to the market value of the items. As the district court observed, it could not "discount the values . . . just because" when it was presented with no evidence of the items' market value. *See In re R.H.*, 728 S.E.2d 911, 912–13 (Ga. Ct. App. 2012) (vacating a restitution award, in which the only evidence of value was purchase price, where the trial court attempted to set the amount of restitution by arbitrarily subtracting from the purchase price without any actual evidence of fair market value). But when the State failed to meet its burden to demonstrate the appropriate amount of restitution, the district court should not have resolved the lack of evidence by granting the victim a windfall. Rather, the court should have calculated the values of the items for which purchase price provided an equitable approximation of value, if any, and awarded nominal restitution for the remaining items. *Cf. Haycraft v. Adams*, 24 P.2d 1110, 1112 (Utah 1933). *See generally* Utah Code Ann. § 77-38a-102(11) (LexisNexis 2012) (indicating that restitution may consist of nominal damages). By calculating the restitution award based on the purchase prices of the stolen items under the circumstances of this case, the district court exceeded its discretion.

## CONCLUSION

¶14   For the foregoing reasons, we agree with Ludlow that the district court exceeded its discretion in calculating the amount of restitution based on the purchase prices of the stolen items rather than their fair market value. Accordingly, we reverse the district court's restitution award and remand for a new restitution hearing.

---